IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

TRAVELERS EXCESS AND SURPLUS )
LINES COMPANY, as a subrogee and )
assignee of HRS ASI Acquisition, LLC, )
           )
           Plaintiff, )    C.A. No. 24-1385 (MN)
      v. )
           )
           )
BRUCE F. ISRAEL and DANIEL L. )
ISRAEL, )
           )
           Defendants. )

**MEMORANDUM ORDER**

At Wilmington this 18th day of March 2026:

This civil dispute stems from a criminal scheme in which owners of asphalt paving companies conspired to rig the bidding processes for new projects. (D.I. 31 ¶ 1). The Defendants, who have pled guilty to criminal charges for this conduct, are alleged here to have unlawfully concealed the scheme in the course of selling their company. (*Id.* ¶¶ 1, 4). The Defendants now seek dismissal of the claims against them.

Before the Court is Defendant Bruce F. Israel's Motion to Dismiss the Amended Complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) ("the Motion to Dismiss") (D.I. 40) and Defendant Daniel L. Israel's Motion to Dismiss and Joinder in Bruce F. Israel's Motion to Dismiss the Amended Complaint ("the Joinder Motion") (D.I. 51) (together, "Motions"). The Motions are fully briefed. (D.I. 41, 43, 45, 51, 53, 54). After careful review of all materials submitted by the parties, both Motions will be granted-in-part and denied-in-part.

I.     **BACKGROUND**

This Court accepts the following allegations from the Amended Complaint (D.I. 31) as true for the sole purpose of deciding the Motions. On December 18, 2020 ("the Closing Date"), Bruce

F. Israel and Daniel L. Israel (together, "the Israel Brothers" or "Defendants") closed the sale of ASI Holding Company, LLC ("the Company") and certain subsidiaries to HRS Acquisition, LLC ("Buyer"), pursuant to a Membership Interest Purchase Agreement ("the Purchase Agreement"). (*Id.* ¶ 2).

Nearly three years after the sale, the United States Department of Justice criminally charged the Israel Brothers with violating antitrust laws. (*Id.* ¶ 4). Both Israel Brothers pled guilty under plea agreements. (*Id.*). The plea agreements describe a "collusive and non-competitive" scheme in which the Israel Brothers conspired with other providers of asphalt paving services to submit "non-competitive bids for asphalt paving services contracts containing higher prices than those prices submitted by the agreed-upon winning co-conspirator" ("the Bid-Rigging Conspiracy") – effectively divvying up customers and charging artificially inflated prices. (*Id.*).

Buyer assigned all its claims in this matter to its insurer, Travelers Excess and Surplus Lines Company ("Travelers" or "Plaintiff"), which brings this action as Buyer's assignee and subrogee. (*Id.* ¶¶ 1, 61-62). Travelers principally alleges that the Israel Brothers fraudulently concealed and made misrepresentations concerning the Bid-Rigging Conspiracy in the course of selling their company. (*Id.* ¶ 1). The Amended Complaint brings six counts: (I) Fraudulent Inducement; (II) Common Law Fraud; (III) Fraudulent Concealment; (IV) Civil Conspiracy; (V) Indemnification; and (VI) Unjust Enrichment. (*Id.* at 26, 31, 35, 38, 39, 45).

## II.    LEGAL STANDARD

### A.    Motion to Dismiss Under Rule 12(b)(6)

In ruling on a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court must accept all well-pleaded factual allegations in the complaint as true and view them in the light most favorable to the plaintiff. *See Lutz v. Portfolio Recovery Assocs., LLC*, 49 F.4th 323, 327-28 (3d Cir. 2022); *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 787 (3d Cir.

2016). A complaint must contain "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). This requires "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555. The Court does not accept "bald assertion[s]," "unsupported conclusions and unwarranted inferences," *Finkelman v. Nat'l Football League*, 810 F.3d 187, 202 (3d Cir. 2016) (citation omitted), or allegations "so threadbare or speculative that they fail to cross the line between the conclusory and the factual," *Connelly*, 809 F.3d at 790 (citation omitted). Instead, the pleadings must provide sufficient factual allegations to allow the Court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

### B.      Rule 9(b) Pleading Standard for Fraud

Counts I, II, III, and V of the Amended Complaint sound in fraud and are thus subject to the "heightened pleading standard" of Rule 9(b). *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 319 (2007); *In re Westinghouse Sec. Litig.*, 90 F.3d 696, 710 (3d Cir. 1996). Under Rule 9(b), "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). "[T]o comply with Rule 9(b), [a plaintiff] must allege 'the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation' and must state 'the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged.'" *Shuker v. Smith & Nephew, PLC*, 885 F.3d 760, 778 (3d Cir. 2018) (quoting *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)).

## III.    DISCUSSION

Defendants move to dismiss or partially dismiss the claims against them on several grounds, which are addressed below.

3

### A.    Statute of Limitations

Defendants contend that all Plaintiff's claims are time-barred because Delaware's three-year statute of limitations expired before this action was filed.[1]   (D.I. 41 at 7).   But on November 30, 2023, Defendants and Buyer executed an amendment to the Purchase Agreement ("the Amendment") agreeing to toll "any and all causes of action and claims against the [Defendants] arising out of or related in any way to the [Purchase Agreement]"[2] for four years following the Closing Date.  (*Id.*, Ex. E ¶ 5).  *See Jacam Chem. Co. 2013, LLC v. Jacam Chem. Co. Inc.*, No. 2021-0659-SG, 2024 WL 960180, at *5 (Del. Ch. Mar. 1, 2024) ("Parties can . . . contractually extend the statute of limitations.").  Under the Amendment, this action was timely filed.

Defendants object that Travelers was not a party to the Amendment.[3]   (D.I. 41 at 9-10). But the Amendment applies by its terms to "any and all causes of action and claims" against Defendants related to the Purchase Agreement – not just those brought by Buyer.  (D.I. 41, Ex. E). Further, an insurer, as a subrogee or assignee, typically "steps into the shoes" of the insured and may assert the insured's rights, subject to the same time restrictions.  *See Trustwave Holdings, Inc.*

---

[1]    The parties agree that Delaware law applies in this case.  (*See generally* D.I. 41, 43).

[2]    "Any statute of limitations or any possible time-bars and time-related defenses applicable to any and all causes of action and claims against the Seller Parties arising out of or related in any way to the MIPA shall be tolled for the duration of the period of time beginning as of the date of execution of the Third Amendment and Waiver and ending on the day that is four years after the Closing Date." (D.I. 41, Ex. E ¶ 5).

[3]    In support of their argument, Defendants rely on two out-of-circuit cases that do not apply Delaware law.  *See James v. Cir. City Stores, Inc.*, 370 F.3d 417 (4th Cir. 2004); *Caguas Cent. Fed. Sav. Bank v. United States*, 215 F.3d 1304 (Fed. Cir. 2000).  These cases are distinguishable on multiple grounds, including because the tolling agreements did not, by their terms, apply to the claims brought in those lawsuits.  *See James*, 370 F.3d at 422; *Caguas*, 215 F.3d at 1309-10.  The broadly worded Amendment here suffers from no similar shortcoming.

*v. Beazley Ins. Co., Inc.*, No. CV N18C-06-162 PRW, 2019 WL 4785866, at *7 (Del. Super. Ct. Sept. 30, 2019); *Resort Point Custom Homes, LLC v. Tait*, No. S08C-04-020ESB, 2010 WL 1443274, at *2 (Del. Super. Apr. 7, 2010).[4]

Defendants also argue that all claims are time-barred because the Amended Complaint, which was filed on March 14, 2025, does not relate back to the original Complaint, which was filed on December 17, 2024. (D.I. 41 at 15-17). Defendants point out that only the Amended Complaint – not the original Complaint – references the specific Amendment that is necessary to toll the statute of limitations here. (*Id.*). Plaintiff responds that the original Complaint correctly alleged that the relevant limitations period closed on December 18, 2024, but mistakenly referenced a different amendment to the Purchase Agreement. (D.I. 1 ¶¶ 73-75; D.I. 43 at 13-15). The Amended Complaint fixed this error and is otherwise nearly verbatim to the original pleading. (D.I. 31, Ex. 1).

"An amendment to a pleading relates back to the date of the original pleading when: . . . the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out – or attempted to be set out – in the original pleading." Fed. R. Civ. P. 15(c). Amended pleadings will generally relate back to the original pleading if they contain a "common core of operative facts" and allow the opposing party "fair notice of the general fact situation and legal theory upon which the amending party proceeds." *See Bensel v. Allied Pilots Ass'n*, 387 F.3d 298, 310 (3d Cir. 2004). That standard is satisfied here. The original Complaint gave Defendants fair

---

[4]    Defendants separately contend that certain of Plaintiff's claims for breach of "non-fundamental" representations and warranties – that is, representations and warranties that are not included within the Purchase Agreement's definition of "Fundamental Representations" – are time-barred because the Purchase Agreement allows such representations to survive only one year following the closing of the transaction. (D.I. 41 at 11). But this argument likewise fails because the Amendment by its terms extends the survival period for these claims. (*Id.*, Ex. E ¶ 5).

notice of the alleged misconduct at issue, the relevant legal theories, and the limitations period. (D.I. 31, Ex. 1).

Therefore, the Motion to Dismiss is DENIED to the extent it relies on the statute of limitations, relation back, or other supposed time bars (D.I. 41 at 7-12, 15-17).

### B.    Non-Compliance with the Laws

Defendants move to dismiss Counts I, II, III, and V to the extent such claims are based on anything other than representations and warranties in the Purchase Agreement concerning compliance with the laws. (*Id.* at 14-15). In particular, Defendants take issue with alleged breach of representations in sections 4.04(a), 4.05(k), and 4.17 of the Purchase Agreement, arguing that Plaintiff has failed to sufficiently specify the basis for breach of these sections. (*Id.*).

This is unpersuasive. Plaintiff plainly alleges that each of these representations is rendered false by the Defendants' involvement in the Bid-Rigging Conspiracy. (D.I. 31 ¶¶ 39(a), 39(c), 39(g)). The Bid-Rigging Conspiracy is described in ample detail in the Amended Complaint. (*Id.* ¶¶ 4-5, 15-23). The Amended Complaint thus properly states "the circumstances of the alleged fraud with sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Shuker*, 885 F.3d at 778 (quoting *Frederico*, 507 F.3d at 200).

Therefore, the Motion to Dismiss Counts I, II, III, and V to the extent such claims are based on anything other than representations and warranties in the Purchase Agreement concerning compliance with the laws (D.I. 41 at 14-15) is DENIED.

### C.    Recklessness

Defendants move to dismiss Plaintiff's claims for Fraudulent Inducement (Count I) and Common Law Fraud (Count II) to the extent these claims rely on Defendants' alleged recklessness as to the falsity of representations and warranties. (*Id.* at 12-13). Defendants argue that such recklessness claims are barred by language in the Purchase Agreement. (*Id.*). Plaintiff does not

dispute this and responds only that it properly pled intentional fraud in the alternative to recklessness. (D.I. 43 at 16).

Therefore, the Motion to Dismiss Counts I and II only to the extent such claims are based in recklessness (D.I. 41 at 12-13) is GRANTED.

### D.    **Extra-contractual Reliance**

Defendants further move to dismiss Plaintiff's claims for Common Law Fraud (Count II) and Fraudulent Concealment (Count III) to the extent such claims are based on anything other than representations and warranties contained in Article IV of the Purchase Agreement. (D.I. 41 at 13). For instance, Count II relies in part on Defendants' "statements made during a management presentation to Buyer regarding the 'integrity' of the business." (D.I. 31 ¶¶ 26-27, 98). The parties' dispute boils down to whether the Purchase Agreement permits fraud claims based on extra-contractual statements.

Delaware law "honor[s] clauses in which contracted parties have disclaimed reliance on extra-contractual representations." *Abry Partners V, L.P. v. F & W Acquisition LLC*, 891 A.2d 1032, 1056 (Del. Ch. 2006). In light of the "law's traditional abhorrence of fraud," Delaware courts have held that "standard integration clauses without specific anti-reliance representations" are insufficient to bar extra-contractual fraud claims. *Id.* at 1058-59. Recognizing the principle of freedom of contract and interests in commercial efficiency, however, Delaware courts enforce "language that, when read together, can be said to add up to a clear anti-reliance clause by which the plaintiff has contractually promised that it did not rely upon statements outside the contract's four corners in deciding to sign the contract." *Kronenberg v. Katz*, 872 A.2d 568, 593 (Del. Ch. 2004). Thus, Delaware law requires "clear" anti-reliance language but not "magic words" to bar extra-contractual fraud claims. *Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 51 (Del. Ch. 2015).

Three provisions of the Purchase Agreement are relevant here. First, Section 10.06 provides that the Purchase Agreement and other transaction documents "constitute the sole and entire agreement of the parties" and "supersede all prior and contemporaneous representations" ("the Integration Clause").[5] Standing alone, the Integration Clause does not prohibit extra-contractual fraud claims. *See Abry Partners*, 891 A.2d at 1059. Second, Section 4.27 provides that no "Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Sellers" other than in Article IV of the Purchase Agreement and in other transaction documents ("the Exclusive Representations Clause").[6] Third, Section 5.09 provides that "Buyer has relied solely upon its own investigation and the express representations and warranties of Sellers set forth in Article IV of this Agreement" and in other transaction

---

[5] "This Agreement and the other Transaction Documents, as well as the Disclosure Schedules and any certificate delivered hereto and thereto, constitute the sole and entire agreement of the parties to this Agreement with respect to the subject matter contained in this Agreement and the other Transaction Documents, and supersede all prior and contemporaneous representations, warranties, understandings and agreements, both written and oral, with respect to such subject matter (other than the Confidentiality Agreement). In the event of any inconsistency between the statements in the body of this Agreement and those in the other Transaction Documents, the Exhibits and Disclosure Schedules (other than an exception expressly set forth as such in the Disclosure Schedules), the statements in the body of this Agreement will control." (D.I. 41, Ex. A § 10.06).

[6] "Except for the representations and warranties contained in this Article IV (including the related portions of the Disclosure Schedules) and in any certificate delivered pursuant to this Agreement, neither Sellers, the Company, the Subsidiaries nor any other Person has made or makes any other express or implied representation or warranty, either written or oral, on behalf of Sellers, the Company or the Subsidiaries, including any representation or warranty as to the accuracy or completeness of any information regarding the Business, the Company, on behalf of itself and the Subsidiaries, furnished or made available to Buyer and its Representatives . . . or as to the future revenue, profitability or success of the Business, or any representation or warranty arising from statute or otherwise in law; *provided*, that Buyer is not disclaiming or waiving any claim based on Fraud." (D.I. 41, Ex. A § 4.27).

documents ("the Non-Reliance Clause").[7]  The Non-Reliance Clause, in particular, appears to bar fraud claims premised on extra-contractual statements.

A wrinkle, however, appears at the end of the Exclusive Representations Clause.  The last sentence of that Clause provides that "***Buyer is not disclaiming or waiving any claim based on Fraud***" ("the Fraud Non-Waiver Provision").  (D.I. 41, Ex. A § 4.27).  The term "Fraud" is defined as "an actual and intentional fraud by a Person," without any suggestion that fraud claims must arise from misrepresentations within the Purchase Agreement.  (*Id.*, Ex. A § 1).

This Court must therefore determine how the Fraud Non-Waiver Provision and the Non-Reliance Clause fit together.[8]   In doing so, the Court is mindful that only "clear" and "unambiguous" anti-reliance language will allow parties to escape responsibility for extra-contractual fraudulent representations.  *Abry Partners*, 891 A.2d at 1059.  Here, as discussed

---

[7]  "Buyer has conducted its own independent investigation, review and analysis of the business, results of operations, prospects, condition (financial or otherwise) or assets of the Company and the Subsidiaries.  Buyer acknowledges and agrees that: (a) in making its decision to enter into this Agreement and to consummate the transactions contemplated by this Agreement, Buyer has relied solely upon its own investigation and the express representations and warranties of Sellers set forth in Article IV of this Agreement (including the related portions of the Disclosure Schedules), the Transaction Documents and any certificate delivered pursuant to this Agreement; and (b) none of Seller, the Company, the Subsidiaries nor any other Person has made any representation or warranty as to Sellers, the Company or this Agreement, except as expressly set forth in Article IV of this Agreement (including the related portions of the Disclosure Schedules), the Transaction Documents and any certificate delivered pursuant to this Agreement."  (D.I. 41, Ex. A § 5.09).

[8]  "Generally, the interpretation of a contract is a question of law that is suitable for determination on a motion to dismiss.  The court may grant a motion to dismiss based on contractual language, however, only if the contractual language is unambiguous—meaning, the language is susceptible of only one reasonable interpretation."  *Fortis Advisors LLC v. Stora Enso AB*, No. CV 12291-VCS, 2018 WL 3814929, at *3 (Del. Ch. Aug. 10, 2018); *see also Prairie Cap. III, L.P. v. Double E Holding Corp.*, 132 A.3d 35, 66 (Del. Ch. 2015) ("The motion to dismiss is granted to the extent that the Buyer and the Incline Fund claim . . . to have relied on misrepresentations or omissions outside of the [Purchase Agreement].").

below, although the Purchase Agreement requires close parsing, it is ultimately clear: Plaintiff may bring fraud claims, but such claims cannot be premised on extra-contractual statements.

To begin, the Fraud Non-Waiver Provision states that Buyer is not "disclaiming or waiving" fraud claims. (D.I. 41, Ex. A § 4.27). The Non-Reliance Clause does not squarely contradict this language. Although the Non-Reliance Clause's bar on extra-contractual reliance may effectively preclude certain fraud claims, it does not operate as a standard "disclaimer or waiver." (*Id.*, Ex. A § 5.09). Rather, the Non-Reliance Clause defines the universe of representations on which the Buyer relied. (*Id.*).

Even if the Non-Reliance Clause and the Fraud Non-Waiver Provision are irreconcilable, "Delaware courts favor specific over general provisions when they conflict because of 'the reasonable inference that specific provisions express more exactly what the parties intended.'" *ITG Brands, LLC v. Reynolds Am., Inc.*, No. CV 2017-0129-AGB, 2019 WL 4593495, at *9 (Del. Ch. Sept. 23, 2019) (*quoting Katell v. Morgan Stanley Grp., Inc.*, No. CIV. A. 12343, 1993 WL 205033, at *4 (Del. Ch. June 8, 1993)). In one sense, the Fraud Non-Waiver Provision is more specific because it addresses a particular category of claims: fraud claims. (D.I. 41, Ex. A § 4.27). But the question here is what may form the basis of those claims – extra-contractual or intra-contractual statements – and on that issue the Fraud Non-Waiver Provision is silent. The Non-Reliance Clause, by contrast, thoroughly addresses the issue. (*Id.*, Ex. A § 5.09).

Plaintiff argues that the Non-Reliance Clause expressly carves out the Fraud Non-Waiver Provision. (D.I. 43 at 17). Plaintiff points out that the Non-Reliance Clause permits reliance on "the express representations and warranties of Sellers[9] set forth in Article IV of this Agreement,"

---

9    The "Sellers" are defined to include the Israel Brothers. (D.I. 41, Ex. A at 1).

and the Fraud Non-Waiver Provision appears within Article IV.[10]  (D.I. 41, Ex. A §§ 4.27, 5.09). That argument, however, fails on closer inspection.  Although Article IV of the Purchase Agreement is titled "Representations and Warranties of the Seller Parties," that does not transform every line or phrase within Article IV into a true representation or warranty.  *Fulkerson v. MHC Operating Ltd.*, No. CIV.A. 01C-07-020, 2002 WL 32067510, at *5 (Del. Super. Ct. Sept. 24, 2002) (citation omitted) ("Contract headings do not constitute controlling evidence of a contract's substantive meaning, however, the court may examine the heading 'as additional evidence tending to support the contract's substantive provisions.'").  Further, representations and warranties are traditionally understood under Delaware law to be statements of fact.  *See Cent. Mortg. Co. v. Morgan Stanley Mortg. Cap. Holdings LLC*, No. CIV.A. 5140-CS, 2012 WL 3201139, at *17 (Del. Ch. Aug. 7, 2012) (representations and warranties are "about facts pre-existing, or contemporaneous with, a contract's closing are to be true and accurate when made" (citation omitted)); *SPay, Inc. v. Stack Media Inc.*, No. CV 2020-0540-JRS, 2021 WL 6053869, at *6 (Del. Ch. Dec. 21, 2021) ("The purpose of representations and warranties is to guarantee the truthfulness of a present fact . . . .").  The Fraud Non-Waiver Provision is not a statement of fact, much less one attributable to the Sellers.  It rather ensures the Buyer has not waived or disclaimed fraud claims.[11]  Thus, the Non-Reliance Clause does not carve fraud claims out of its scope.

---

[10]   The Non-Reliance Clause similarly provides that Sellers have not "made any representation or warranty . . . except as expressly set forth in Article IV of this Agreement" and in other transaction documents.  (D.I. 41, Ex. A § 5.09).

[11]   This Court takes note that Delaware courts generally try to give effect to all contractual provisions and avoid "interpretations that render contractual language superfluous or internally inconsistent." *Johnson & Johnson Fortis Advisors LLC*, No. 490, 2024, 2026 WL 89452, at *25 (Del. Jan. 12, 2026).  This principle does not have much bearing on the present dispute.  On the one hand, permitting fraud claims to rely on extra-contractual statements largely neuters the Non-Reliance Clause.  On the other hand, the opposite interpretation embraced by this Court reduces the Fraud Non-Waiver Provision to a

Therefore, the Motion to Dismiss is GRANTED to the extent it seeks dismissal of Plaintiff's claims for Common Law Fraud (Count II) and Fraudulent Concealment (Count III) insofar as those claims are based on anything other than representations and warranties contained in Article IV of the Purchase Agreement.

### E.      Joinder

Daniel L. Israel has moved to join in his brother Bruce F. Israel's Motion to Dismiss and has requested dismissal on the same grounds.  (D.I. 51).  Because the Joinder Motion was filed late, Daniel L. Israel effectively seeks an extension of time.  (*Id.*).  Under Rule 6(b)(1) of the Federal Rules of Civil Procedure, Daniel L. Israel must show there is "good cause" to extend the deadline for joinder, and this Court should consider whether he has acted in good faith and whether there is potential prejudice to Plaintiff.  *See Davis v. Ace Hardware Corp.*, No. CV 12-1185-SLR-CJB, 2014 WL 2990329, at *2 (D. Del. July 2, 2014).

Daniel L. Israel has sufficiently demonstrated good faith.  He did not initially join the Motion to Dismiss because he filed a separate motion to stay this case pending the resolution of a proceeding in Delaware state court.  (D.I. 19; D.I. 54 at 1-2).  When that case was settled and dismissed, Daniel F. Israel promptly filed this Joinder Motion.  (D.I. 54 at 2).  Further, there is no prejudice to Plaintiff because virtually all the allegations in the Amended Complaint and

---

statement of boilerplate Delaware law – that fraud claims based on "false representation[s] of fact made *within* the contract itself . . . cannot be disclaimed." *RAA Mgmt., LLC v. Savage Sports Holdings, Inc.*, 45 A.3d 107, 117 (Del. 2012) (citation omitted).  But it is not uncommon for contracts to reiterate statements of law.  *See, e.g.*, *ESG Cap. Partners II, LP v. Passport Special Opportunities Master Fund, LP*, No. CV 11053-VCL, 2015 WL 9060982, at *5 (Del. Ch. Dec. 16, 2015); *New Enter. Assocs. 14, L.P. v. Rich*, 292 A.3d 112, 138 (Del. Ch. 2023).  After all, a provision restating the law may save a party time in researching the state of the law, and it may provide parties with added assurances in the event that a judge were to misinterpret the law or the law were to change.

arguments in the Motion to Dismiss apply equally to both Israel Brothers. (*See generally* D.I. 31; D.I. 41).

Therefore, the Joinder Motion is GRANTED to the extent that Daniel L. Israel seeks to join in Bruce F. Israel's Motion to Dismiss. To the extent the Joinder Motion seeks dismissal of claims, it is GRANTED as to the claims that this Court has dismissed in this Memorandum Order and DENIED in all other respects.

## IV.    CONCLUSION

THEREFORE, IT IS HEREBY ORDERED that, for the reasons set forth above Defendants' Motions (D.I. 40, 51) are GRANTED-IN-PART and DENIED-IN-PART. For clarity, Counts I and II are dismissed only to the extent they are based on allegations of recklessness, and Counts II and III are dismissed only to the extent they are based on allegations of reliance on extra-contractual representations. The Motions are denied in all other aspects, and all other claims in the Amended Complaint remain in this case.

_Maryellen Noreika_

The Honorable Maryellen Noreika
United States District Judge